# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
### APPELLATE DIVISION

| | |
|---|---|
| WADE GUMBS | ) |
| Appellant, | ) D.C. Crim. App. No.2003-14 |
| | ) |
| v. | ) Super. Ct. Crim. No. ST-02-CR-147 |
| | ) |
| PEOPLE OF THE VIRGIN ISLANDS | ) |
| | ) |
| Appellee. | ) |

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Brenda J. Hollar, presiding

**Considered: December 8, 2009**
**Filed: July 19, 2010**

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND FINCH**, Judge of the District Court of the
Virgin Islands; and **PATRICIA STEELE**, Judge of the Superior Court,
Division of St. Croix, sitting by designation.

ATTORNEYS:

**Ravinder S. Nagi, Esq.**
St. Thomas, U.S.V.I.
        *For the Appellant.*

**Matthew C.Phelan, AAG**
St. Thomas, U.S.V.I.
        *For the Appellee.*

---

## MEMORANDUM OPINION

**PER CURIAM,**

Wade Gumbs ("Gumbs") appeals his convictions in the Superior Court[1] of the Virgin Islands for first degree murder and unauthorized possession of a firearm during the commission of a crime of violence. For the reasons stated below, the Court will affirm the convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2001, in the Savan area of St. Thomas, U.S. Virgin Islands, Rudolph Fleming ("Fleming") was shot in the head. Fleming later died at the hospital.

Gumbs was charged with Fleming's murder, in violation of V.I. Code Ann. tit. 14, § 922(a)(1), and unauthorized possession of a firearm during the commission of a crime of violence, in violation of V.I. Code Ann. tit. 14, § 2253(a).

Gumbs received a two-day trial before a jury and was convicted on December 4, 2002. The Superior Court sentenced Gumbs to life in prison without parole for the first degree murder conviction, and to 15 years in prison for the firearm conviction. Gumbs timely filed this appeal.

Gumbs makes four arguments for review by this Court. He

---

[1]    Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

argues that: (1) he was denied his Sixth Amendment right to

effective assistance of counsel, (2) the government failed to

release *Brady*[2] materials, (3) the testimony of the government's

eye witness was insufficient to support his conviction, and (4)

the trial court admitted into evidence proof of the non-existence

of Gumbs' license for firearms, in violation of his Confrontation

Clause rights.

## II. **DISCUSSION**

### A.   **Jurisdiction**

This Court has jurisdiction to review judgments and orders

of the Superior Court in criminal cases. *See* Revised Organic Act

§ 23A, 48 U.S.C. § 1613a; Act No. 6687 § 4 (2004).

### B.   **Standard of Review**

#### 1. Ineffective Assistance of Counsel

To prevail on an claim of ineffective assistance of counsel,

a defendant must show both deficiency in performance and

prejudice. *Strickland v. Washington*, 466 U.S. 668, 700 (1984).

"The 'deficiency' step asks whether counsel's conduct 'fell below

an objective standard of reasonableness' viewed as of the time it

occurred." *United States v. Baird*, 218 F.3d 221, 226 (3d Cir.

---

[2] *Brady v. Maryland*, 373 U.S. 83, 88 (1963) held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

2000) (quoting *Strickland*, 466 U.S. at 688, 690; citing *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)). "The 'prejudice' prerequisite asks whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694; citing *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991)).

### 2. *Brady* Violation

"When a *Brady* violation is alleged[,] issues of law and fact usually are presented." *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993). "In that circumstance[,] [an appellate court] review[s] the [trial] court's legal conclusions on a *de novo* basis and its factual findings under the clearly erroneous standard." *Id.; see also United States v. Perdomo*, 929 F.2d 967, 969 (3d Cir. 1991) (citing *Carter v. Rafferty*, 826 F.2d 1299, 1306 (3d Cir. 1987)). "Where the correct legal standard has been used, 'weighing of the evidence merits deference from the [appellate court], especially given the difficulty inherent in measuring the effect of a non-disclosure on the course of a lengthy trial covering many witnesses and exhibits.'" *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006) (quoting *United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993)).

### 3. Sufficiency of the Evidence

An appellate court exercises plenary review over sufficiency of the evidence claims. *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008). "'In exercising that review, we must interpret the evidence in the light most favorable to the government as the verdict winner,' [citation] and 'do not weigh evidence or determine the credibility of witnesses in making [our] determination.'" *Id.* (second alteration in original) (quoting *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998); *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)). That is, the verdict must stand if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . ." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Overall, "a claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotation marks and citation omitted).

## 4. Confrontation Clause

This Court reviews *de novo* the trial court's admission of evidence that the defendant argues violated his Confrontation Clause rights. *See United States v. Hendricks*, 395 F.3d 173, 177 (3d Cir. 2005) ("The District Court's decision to exclude the evidence at issue turned on its application of the Sixth

Amendment and its interpretation of the Supreme Court's decision

in *Crawford* [*v. Washington,* 541 U.S. 36 (2004) and] . . .

presents a question of law which we review *de novo.*" (citing

*United States v. Trala,* 386 F.3d 536, 543 (3d Cir. 2004); *United

States v. Barbosa,* 271 F.3d 438, 452 (3d Cir. 2001)). "We review

*de novo* questions of law, issues implicating rights protected

under the U.S. Constitution, and the interpretation of

statute[s]." *Garcia v. Gov't of the V.I.,* 48 V.I. 530, 534

(D.V.I. App. Div. 2006) (citing *Gov't of the V.I. v. Albert,* 89

F. Supp. 2d 658, 663 (D.V.I. App. Div. 2001)); *see also United

States v. Singletary,* 268 F.3d 196, 198 (3d Cir. 2001).

### III.  ANALYSIS

### A.  Ineffective Assistance of Counsel

Gumbs argues that he was denied his Sixth Amendment right to

effective assistance of counsel, pursuant to the test set forth

in *Strickland v. Washington,* 466 U.S. 668 (1984).  Gumbs contends

that his counsel failed to adequately represent him because (1)

he did not investigate and prepare the theory that harvesting

Fleming's organs, and not the gunshot wound, was the actual cause

of Fleming's death, (2) he did not investigate the Virgin Islands

Police Department's ("VIPD") investigation of the murder, and (3)

because counsel concurrently represented another defendant named

Hakim Brooks ("Brooks").

In order to prove his counsel was ineffective pursuant to *Strickland*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

"It is well settled . . . that Sixth Amendment ineffective assistance of counsel claims . . . are generally not entertained on a direct appeal." *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004) (citation omitted). "This refusal to entertain . . . claims on direct review stems from the reality that such claims frequently involve questions regarding conduct that occurred outside the purview of the [trial] court and therefore can be resolved only after a factual development at an appropriate hearing." *Id.* (citations and quotations omitted).

There is a narrow exception to this rule: "[W]here the record is sufficient to allow determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed." *United States v. Headley*, 923 F.2d 1079,

1083 (3d Cir. 1991). However, "[w]here a claim of ineffective assistance of counsel is based on attorney incompetence, the lack of a fully developed record often precludes a comprehensive inquiry into the elements of strategy or tactics that may have entered into defense counsel's challenged decision." *McLaughlin*, 386 F.3d at 556 (citing *Gov't of V.I. v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984)).

The record in this matter does not permit the Court to consider the reasonableness of the trial strategy or potential conflict of interest experienced by Gumbs' counsel. Specifically, the record is inadequate for a determination to be made regarding whether Gumbs' counsel sufficiently developed the theory that Fleming's cause of death was not his gunshot wound. The Court also cannot determine, on the record before it, whether Gumbs' attorney engaged in unethical conduct violative of Gumbs' right to counsel. Because none of Gumbs' ineffective assistance of counsel arguments "fits into that narrow class of ineffectiveness claims amenable to review on direct appeal," *McLaughlin*, 386 F.3d at 556, those arguments are better left for collateral attack.[3] Accordingly, the Court declines to address those arguments.

---

[3] Indeed, Gumbs did file a habeas corpus petition with the trial court. The trial court held an evidentiary hearing, and ruled that Gumbs' petition was without merit.

## B. *Brady* Violations

Gumbs argues that the government violated his due process rights by failing to release materials concerning its key witness, Andrea Powell ("Powell"), and by failing to produce Fleming's medical records.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The holding in *Brady* was extended to include impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *see also United States v. Risha*, 445 F.3d 298 (3d Cir. 2006) ("Of course, a failure of the prosecution to disclose impeachment evidence, coupled with a duty to disclose, would result in a *Brady* violation.").

To prove a *Brady* or *Giglio* violation, the defendant must show that (1) the government withheld evidence, (2) the evidence was favorable, either because it was exculpatory or has impeachment value, and (3) the withheld evidence was material. *See Risha*, 445 F.3d at 303 (applying the three-part *Brady* test where impeachment evidence was withheld).

### 1. Information Regarding Powell

Here, Gumbs argues that the government failed to

disclose that (1) it suddenly extended Powell's overstayed visa,
(2) paid her, and (3) arranged and paid for her son to be
relocated off-island. "When the reliability of a given witness
may well be determinative of guilt or innocence, nondisclosure of
evidence affecting credibility," such as impeachment evidence,
may require a new trial. *See Giglio*, 405 U.S. at 154 (quotation
omitted).

In this case, defense counsel inquired about Powell's
immigration status before trial. The docket shows that on
December 2, 2002, a day before jury selection, the government
filed a "response to inquiry regarding Andrea Powell and INS
status." (Docket p. 16.) Further, defense counsel asked Powell
on cross examination about whether she had received assistance
with her immigration status in exchange for testifying:

> Q But isn't it true that the U.S. Attorney's Office
> and the Virgin Islands Department of Justice, is
> assisting you with your immigration status?
> A No, they did not assist me with no immigration
> status like that. . . .
> Q Miss Powell, isn't it true that you are out of
> status presently?
> A If I am out of status?
> Q Your visa has expired?
> A Yes, my visa is.
> Q So therefore you are over stay; you're illegal
> right?
> A No, I'm not overstayed. I went to the immigration
> office.
> Q And isn't it true that you received a copy of a
> letter from [prosecution] Attorney Alperen here?
> A No, I —
> Q Wait a minute. . . .

A    Okay.

Q    To Mr. Hershel Miller, requesting of the U.S.
     immigration Service, requesting that -- informing
     them that you're an eyewitness, and that she has
     no papers status. Meaning, that you have no
     status, right?

A    Yes, I am listening to you.

Q    You remember that, right?

A    No.

                    . . .

Q    . . . You remember receiving your work permit,
     right?

A    Yes.

Q    And you know that came as a result of your
     cooperation with the Virgin Islands Police
     Department, right?

A    No, it did not come up like that.

                    . . .

Q    . . . It's your testimony that you never received
     any information from Attorney Alperen here, that
     he was going to write to Mr. Miller, the agent in
     charge of Immigration, to assist you to obtain
     proper immigration status because of your
     cooperation in this case?

A    No, he did not.

                    . . .

Q    Okay. And you could not have gotten that work
     permit without the assistance of the Department of
     Justice; is that correct, because you overstay?

A    No. No. I take him my stuff and show them my
     passport, everything, and I took them in to
     Immigration.

(App. 129-133.)  This exchange, while not perfectly clear,

indicates that Powell did not receive immigration assistance in

exchange for testifying at Gumbs' trial.  It also indicates that,

even if she did, defense counsel was aware of that transaction in

time to cross examine her about it.  To the extent possible,

defense counsel attempted to impeach Powell by questioning

whether she had received immigration assistance in exchange for

her testimony. Gumbs has failed to show that the government

withheld any evidence regarding Powell's immigration status from

the defense. As such, Gumbs cannot show there was a *Giglio*

violation with regard to Powell's testimony being exchanged for

immigration assistance.

Defense counsel was also able to elicit testimony from

Powell that the VIPD arranged for her to receive $500. (App. 138-

39.) The prosecution also asked VIPD detective Mario Stout about

the payment Powell received. Stout confirmed the fact that

Powell was given $500, but denied that her testimony had been

bought. (App. 268-73.) Further, in his opening statement,

defense counsel alluded to Powell receiving payment from the VIPD

in exchange for testifying, saying the VIPD had purchased her

testimony. (App. 15.) As such, it seems clear that the defense

knew about the payment to Powell by the time the trial commenced.

Gumbs' argument that there was a *Giglio* violation regarding

Powell's payment is without merit because the record does not

support the allegation that any information was withheld.

There was also evidence presented that the VIPD removed

Powell's son from St. Thomas during the Fleming murder

investigation. Gumbs allegedly threatened that he would kill

Powell's son if the police were informed about Gumbs' involvement

in Fleming's murder. Gumbs now argues that the government failed

to disclose the fact that the government paid for Powell's son's flight from St. Thomas, constituting a *Giglio* violation.

At trial, the prosecution asked Powell if her son was taken off island. Powell testified that she told the VIPD that her son had been threatened, and the VIPD helped send the boy off of St. Thomas. Gumbs' argument is undermined by the fact that the prosecution elicited this potentially impeaching information about Powell on her direct examination, giving him the opportunity to cross examine her about it. *See United States v. Johnson*, 816 F.2d 918, 924 (3d Cir. 1987) ("Where the government makes *Brady* evidence available during the course of a trial in such a way that a defendant is able effectively to use it, due process is not violated and *Brady* is not contravened.") (citations omitted); *See also* United States v. Peters, 732 F.2d 1004 (1st Cir. 1984) (no *Brady* violation where government disclosed evidence on trial's fourth day but defendant was able to cross-examine witnesses on, and make full use of, the disclosed evidence). It is highly unlikely that earlier disclosure would have produced "'a reasonable probability that the result of the proceeding would have been different.'" *United States v. Pelullo*, 14 F.3d 881, 886-887 (3d Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). As with his other *Giglio* arguments, Gumbs has not shown that evidence was

withheld from him in a manner that impeded his impeachment of

Powell.

### 2. Medical Records

Gumbs further argues that the government had a duty to

disclose all of Fleming's medical records in its possession.

Gumbs contends that the government's failure to disclose some of

those records impeded defense counsel's ability to argue that

Fleming's gunshot wound was not the proximate cause of death.

Defense counsel's opening statement previewed his argument

that the proximate cause of Fleming's death was his removal from

life support, not his bullet wound. (Ap. 15-22, "We don't know

what decisions were made to declare him brain dead . . . .

Someone at the hospital took it upon themselves and decided that

this man is brain dead and we're going to snatch his organs . . .

.")

"The rule of *Brady v. Maryland*, 373 U.S. 83 . . . involves

the discovery, after trial, of information which had been known

to the prosecution but unknown to the defense." *United States v.*

*Agurs*, 427 U.S. 97, 104 (1976). Given defense counsel's opening

statement, and given the fact that Fleming was known to have died

in the hospital, Gumbs cannot now argue that he did not know

Fleming's medical records existed. As the trial court pointed

out when defense counsel requested the records during trial,

Gumbs could have issued a subpoena before trial to obtain the
records. (Ap. 227.)  When, as here, allegedly exculpatory
information is known to the defense in time for it to be acted
upon, that fact can cure any alleged prosecutorial non
disclosure. *See United States v. Dansker*, 565 F.2d 1262, 1265 (3d
Cir. 1977) ("Alleged exculpatory information which becomes known
to the defense at a time it could have been acted upon may cure
prosecutorial non-disclosure in certain circumstances.")
(citations omitted).

Even assuming *arguendo* that Gumbs could show that the
government withheld Fleming's medical records, he would have to
show both that the records were exculpatory and material.[4]  The
touchstone of materiality

> is a "reasonable probability" of a different result,
> and the adjective is important. The question is not
> whether the defendant would more likely than not have
> received a different verdict with the evidence, but
> whether in its absence he received a fair trial,
> understood as a trial resulting in a verdict worthy of
> confidence. A "reasonable probability" of a different
> result is accordingly shown when the government's
> evidentiary suppression "undermines confidence in the
> outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (quoting *United States
v. Bagley*, 473 U.S. 667, 678 (1985).

In this case, the government introduced the testimony of Dr.

---

[4] The records are not a part of the record before this Court.

William Fogarty ("Fogarty"), who was declared an expert in
pathology. (App. 189.) Fogarty testified that Fleming's cause of
death was "[m]ajor lacerations to both cerebral hemispheres to
the brain due to a gun shot wound to the head." (*Id.* at 194.)
Fogarty also stated that the bullet found in Fleming's brain
caused his death. (*Id.* at 207.) Given the evidence supporting
the conclusion that Fleming died from the gun shot wound, there
is no reasonable probability that production of the victim's
medical records would have resulted in a different result.
Further, many courts, confronted with a victim's removal from
life support, have rejected the contention that such removal is
an independent intervening cause of death. *See, e.g, State v.
Pelham*, 824 A.2d 1082, 1091 (N.J. 2003) (collecting cases from 17
states and noting "courts have confronted whether a victim's
removal from life support renders a homicide verdict against the
weight of the evidence and have rejected the contention that
there was insufficient evidence to support a conviction when the
victim expired following his or her removal from life support.").

Accordingly, Gumbs has failed to show the medical records
were material, and as such he cannot show there was a *Brady*
violation even if the government had an obligation to produce the
records.

## C. Sufficiency of the Evidence

Gumbs argues that Powell's testimony was insufficient to support either of his convictions. He argues that Powell's credibility was impeached during the trial to the extent that the government could not have proved its case beyond a reasonable doubt. Gumbs further argues that there was insufficient evidence of Fleming's cause of death for a jury to find that he died due to his gun shot wounds.

## 1. First degree murder

The offense of first degree murder is codified in title 14, section 922(a) ("section 922(a)") of the Virgin Islands Code. Section 922(a) provides: "All murder which--(1) is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing . . . is murder in the first degree." V.I. CODE ANN. tit. 14, § 922(a). To convict Gumbs of first degree murder, the government needed to prove beyond a reasonable doubt that (1) Gumbs unlawfully killed Fleming with malice aforethought, and (2) the killing was willful, deliberate and premeditated. *See* V.I. CODE ANN. tit. 14, § 921 ("Murder is the unlawful killing of a human being with malice aforethought."); *Gov't of the V.I. v. Lanclos*, 477 F.2d 603, 606 (3d Cir. 1973) (explaining the principles of willfulness, deliberation, and premeditation in regard to a section 922(a) conviction) (quoting *Gov't of the V.I. v. Lake*,

362 F.2d 770, 776 (3d Cir. 1966)).

Powell testified that shortly before the shooting, she
noticed a car coming down the street, and saw Gumbs go behind a
laundromat and return to the street with a backpack on his back
and a gun in his hand. (*Id.* at 93-94.)  She testified that Gumbs
fired at the man in the car from the passenger side saying he was
"'going to f---ing kill him.'" (App. at 94-95, 98-99.)  The car
continued to roll down hill. (*Id.* at 99)  Powell saw Gumbs walk
down to the car, and heard Gumbs say he had to make sure the man
was dead because he had killed somebody else. (*Id.* at 95-96, 99-
100.)

Gumbs does not argue that Powell's testimony was
insufficient to prove any of the elements of first degree murder.
Rather, he argues that Powell's credibility was impeached to such
a degree that the jury could not have found him guilty of first
degree murder beyond a reasonable doubt.  "'It is the jury, not
the court, which is the fact-finding body. It weighs the
contradictory evidence and inferences, judges the credibility of
witnesses, receives expert instructions, and draws the ultimate
conclusion as to the facts.'" *United States v. Rockwell*, 781 F.2d
985, 990 (3d Cir. 1986) (quoting *Tennant v. Peoria & P.U. Ry.
Co.*, 321 U.S. 29, 35 (1944)).  Further, the United States Court
of Appeals for the Third Circuit has confirmed that the testimony

of a single witness can be sufficient to uphold a conviction.

*See, e.g., United States v. Perez*, 280 F.3d 318, 344 (3d Cir.

2002) ("uncorroborated accomplice testimony may constitutionally

provide the exclusive basis for a criminal conviction") (citation

omitted).

With regard to Fleming's cause of death, the government

introduced the testimony of Dr. Fogarty. Fogarty testified that

Fleming's cause of death[5] was "[m]ajor lacerations to both

cerebral hemispheres to the brain due to a gun shot wound to the

head." (*Id.* at 194.) Fogarty also stated that the bullet found

in Fleming's brain caused his death. (*Id.* at 207.) Fogarty

testified that Fleming was still breathing when he came into the

emergency room, but that he had no brain waves for 24 hours and

was declared brain dead. (*Id.* at 199, 220.) Further, Fogarty was

cross examined and defense counsel did not ask him about

Fleming's cause of death. (*Id.* at 222-32.) Considering that

Fogarty testified that Fleming died from a gun shot wound to the

head, and there was no contradictory evidence, there was

sufficient evidence for the jury to agree that Fleming's cause of

death was the gun shot wound.

We find that the evidence adduced at trial, viewed in the

---

[5] Fogarty also testified that his autopsy report on Fleming listed
anatomic diagnoses including (1) gun shot wound to the head, and (2) organ
donations of heart, liver and kidneys. Fogarty made clear that anatomic
diagnoses are not the same as causes of death. (App. 195-96.)

light most favorable to the Government, was sufficient to support

Gumbs' first degree murder conviction.

## 2. Unauthorized possession of a firearm

The crime of unauthorized possession of a firearm is

codified in title 14, section 2253(a) ("section 2253(a)") of the

Virgin Islands Code.  Section 2253(a) provides, in pertinent

part:

> Whoever, unless otherwise authorized by law, has,
> possesses, bears, transports or carries either,
> actually or constructively, openly or concealed any
> firearm, as defined in Title 23, section 451(d) of this
> code, loaded or unloaded, may be arrested without a
> warrant . . . except that if . . . such firearm or an
> imitation thereof was had, possessed, borne,
> transported or carried by or under the proximate
> control of such person during the commission or
> attempted commission of a crime of violence, as defined
> in subsection (d) hereof, then such person shall be
> fined $25,000 and imprisoned not less than fifteen (15)
> years nor more than twenty (20) years.

V.I. CODE ANN. tit. 14, § 2253(a).  To obtain a conviction under

section 2253(a), the government had to prove beyond a reasonable

doubt that (1) Gumbs knowingly possessed a gun, (2) without

authorization, (3) during a crime of violence, and (4) the gun

was operable. *See United States v. Xavier*, 2 F.3d 1281, 1291 (3d

Cir. 1993); *Gov't of the Virgin Islands v. Albert*, 18 V.I. 21, 24

(D.V.I. 1980) *aff'd* 676 F.2d 685 (3d Cir. 1982).

Again, Gumbs does not allege that the government failed to

present sufficient evidence to prove any of the elements of the

crime. Instead, Gumbs argues that Powell's uncorroborated testimony was insufficient for the government to prove beyond a reasonable doubt that he committed the crime.

The jury is the arbiter of the facts. *See Rockwell*, 781 F.2d at 990. Testimony of a single eye witness is sufficient to support a conviction. *United States v. Steptoe*, 126 Fed. Appx. 47, 49 (3d Cir. 2005) (unpublished) ("The testimony of one uncorroborated witness is sufficient to convict." (citing *Perez*, 280 F.3d at 344)). As discussed above, the jury believed Powell's testimony that Gumbs retrieved a gun and shot at Fleming, striking him in the head. That testimony showed that Gumbs (1) knowingly possessed a gun, (2) during a crime of violence, and (3) that the gun was operable.[6] All of these facts were supported by Powell's testimony that she saw Gumbs shoot at Fleming and follow his car to make sure he was dead. Accordingly, Gumbs' argument that there was not sufficient evidence to convict him of unlawful possession of a firearm is without merit.

## D. Confrontation Clause

Gumbs argues that the trial court's admission of a certificate of the absence of an entry of Gumbs' license to

---

[6] There was also evidence that Gumbs was not authorized to possess the gun. The Court admitted a certificate of the absence of an entry of Gumbs' license to possess a gun. (App. 261.)

possess a gun violated the Confrontation Clause of the Sixth

Amendment.[7]

A defendant's Sixth Amendment right to be confronted with

the witnesses against him applies only to evidence that is

considered "testimonial." *Davis v. Washington*, 126 S. Ct. 2266,

2273-76 (2006). However the Supreme Court has declined to

provide a comprehensive definition of testimonial evidence. *Id.*

at 2273 (citation omitted); *Crawford v. Washington*, 541 U.S. 36,

68 (2004) ("We leave for another day any effort to spell out a

comprehensive definition of "testimonial.").

Fortunately, courts are not without guidance as to what

makes evidence testimonial. The *Crawford* court explained that

"[w]hatever else the term covers, it applies at a minimum to

prior testimony at a preliminary hearing, before a grand jury, or

at a former trial; and to police interrogations. These are the

modern practices with closest kinship to the abuses at which the

Confrontation Clause was directed." *Crawford*, 541 U.S. at 68.

Significantly, the Supreme Court has also articulated a

class of evidence that traditionally has not been considered

testimonial. "Most of the hearsay exceptions covered statements

that by their nature were not testimonial--for example, business

---

[7] The Sixth Amendment provides, in pertinent part that "[i]n all
criminal prosecutions, the accused shall enjoy the right . . . to be
confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

records . . . ." *Id.* at 56; *see also Id.* at 76.

Gumbs does not explicitly state that the certificate of lack of a license is testimonial. However, the Court presumes that is Gumbs' argument because *Crawford's* prohibition applies only to testimonial evidence.

In analogous cases, several Courts of Appeals have rejected the argument that certificates of nonexistence of records ("CNRs") permitting aliens' reentry into the United States are a testimonial document falling within *Crawford's* purview, even though they are prepared in anticipation of litigation, one of the key considerations in determining whether evidence is testimonial. *See, e.g., United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005) ("The CNR admitted into evidence in this case, reflecting the absence of a record that Rueda-Rivera had received consent to re-enter the United States, does not fall into the specific categories of testimonial statements referred to in *Crawford*. We decline to extend *Crawford* to reach such a document."); *United States v. Cervantes-Flores*, 421 F.3d 825, 834 (9th Cir. 2005) ("We hold that the CNR is nontestimonial evidence under *Crawford* and thus was properly admitted by the district court.").

In determining whether the certification that Gumbs had not been issued a license to possess a firearm was admissible, this

Court finds persuasive the line of cases finding that CNRs are nontestimonial evidence whose admission is not barred by *Crawford*. Both classes of documents certify the nonexistence of a record that would have existed, if at all, regardless of the fact of litigation, just like a business record. *See Cervantes-Flores*, 421 F.3d at 833 ("The CNR certifies the nonexistence of a record within a class of records that themselves existed prior to the litigation, much like business records."). In addition, this Court has in the past held that a certificate of the absence of an entry of a defendant's license to possess a gun is not testimonial in nature and does not violate that defendant's right to confront the witnesses against him. *Gov't of the Virgin Islands v. Richardson*, No. 2002-172, 2009 U.S. Dist. LEXIS 3712, at *17 (D.V.I. App. Div. Jan. 13, 2009) ("the certificate is not of a testimonial nature").

Despite sparse case law addressing the question directly, we do not believe that a certificate of nonexistence of a firearm license is the type of testimonial evidence contemplated by *Crawford*. We hold that admission of the certificate did not violate Gumbs' right to confront the witnesses against him.

## IV.  CONCLUSION

For the reasons stated above, the Court will affirm Gumbs'

convictions.   An appropriate judgment accompanies this opinion.